1  UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF NEW YORK
2  ------------------------------x
                                        18-CR-524(DLI)
3  UNITED STATES OF AMERICA,
                                        United States Courthouse
4                                       Brooklyn, New York

5          -against-                    February 13, 2019
                                        11:00 a.m.
6  IGAL HAIMOFF,

7          Defendant.

8  ------------------------------x

9           TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
              BEFORE THE HONORABLE DORA L. IRIZARRY
10              UNITED STATES CHIEF DISTRICT JUDGE

11 APPEARANCES

12 For the Government:        UNITED STATES ATTORNEY'S OFFICE
                             Eastern District of New York
13                           271 Cadman Plaza East
                             Brooklyn, New York 11201
14                           BY:  NATHAN REILLY, ESQ.
                             Assistant United States Attorney
15
   For the Defendant:        BRUCE MONTAGUE & ASSOCIATES
16                           212-45 26th Avenue
                             Bayside, New York 11360
17                           BY:  ALAN GERSON, ESQ.

18
   Court Reporter:           Rivka Teich, CSR, RPR, RMR, FCRR
19                           Phone:  718-613-2268
                             Email:  RivkaTeich@gmail.com
20
   Proceedings recorded by mechanical stenography.  Transcript
21 produced by computer-aided transcription.

22

23

24

25

PLEADING

1                    (In open court.)

2                    THE COURTROOM DEPUTY:  All Rise.  Criminal cause for

3     pleading, docket 18-CR-524, United States versus Igal Haimoff.

4                    State your appearances.

5                    MR. REILLY:  Good morning, your Honor, Nathan Reilly

6     for the United States.

7                    THE COURT:  Good morning.

8                    MR. GERSON:  Alan Gerson for defendant, Igal

9     Haimoff.

10                   THE COURT:  Good morning.  Good morning,

11    Mr. Haimoff.

12                   THE DEFENDANT:  Good morning.

13                   THE COURT:  I'm going to ask everyone to remain

14    seated and speak into the microphones.  Mr. Haimoff, if could

15    you pull that one up close to you.  I see your light is on, so

16    it should be working.

17                   My understanding is that Mr. Haimoff wishes to

18    withdraw his previously entered plea of not guilty and enter a

19    plea of guilty to Count One of the Indictment that's been

20    filed in this case, which charges him with a money laundering

21    conspiracy; is that correct, Mr. Gerson?

22                   MR. GERSON:  Yes, your Honor.

23                   THE COURT:  Is there water there for you?

24                   MR. GERSON:  It's fine.

25                   THE COURT:  It gets very dry here.

PLEADING

1          MR. GERSON:  Thank you, your Honor.

2          THE COURT:  Mr. Haimoff, is that what you wish to

3  do, sir?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Do you swear under oath or do you

6  affirm?  I will have to swear you before I can conduct my

7  allocution.

8          MR. GERSON:  He will affirm.

9          THE COURT:  Please place Mr. Haimoff under oath.

10          COURTROOM DEPUTY:  Raise your right hand.

11          (Witness affirmed.)

12          THE DEFENDANT:  Yes.

13          THE COURT:  Thank you.  Bear with me there has to be

14  a complete record, so there may be some questions that I will

15  ask you that may seem counterintuitive but we have to have a

16  complete record.

17          Are you able to speak and understand English, sir?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Are you able to read and write in the

20  English language?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Have you had any difficulty at all

23  communicating with your attorney during the course of this

24  case?

25          THE DEFENDANT:  No, your Honor.

PLEADING

1              THE COURT:  Before I can accept your plea of guilty

2     I must ask you a number of questions to assure myself that

3     your plea is a valid plea.  So it is important that if there

4     is anything at all that I ask you that you do not understand

5     or if -- I'm going to have to explain things, if there is

6     something that I'm explaining to you that you do not

7     understand, please let me know that.  I'll be glad to explain

8     it to you.  It does not matter to me how many times you ask me

9     to explain something; this is the time to ask, okay?

10              THE DEFENDANT:  Yes, your Honor.

11              THE COURT:  Do I have your assurance that you will

12     let me know if there is anything at all that you do not

13     understand?

14              THE DEFENDANT:  Yes, your Honor.

15              THE COURT:  Okay.  Importantly, I do not want to you

16     answer a question that you do not understand, okay?

17              THE DEFENDANT:  Yes, your Honor.

18              THE COURT:  Thank you.  Do you also understand that

19     you have the right to be presented by an attorney at trial and

20     every other stage of the proceedings including this one today?

21              THE DEFENDANT:  Yes, your Honor.

22              THE COURT:  Do you also understand that if you

23     cannot afford counsel, that the Court may appoint counsel for

24     you.  My understanding is that Mr. Gerson is retained; is that

25     correct, sir?

PLEADING

1          THE DEFENDANT:  Yes.

2          THE COURT:  Along with that right to counsel, if at

3    any point in time during this proceeding you would like to

4    consult with your attorney, maybe before you answer a question

5    or at any time at all, just let me know that and I'll give you

6    the opportunity to do consult with him.  I do not have a

7    crystal ball, so I do not know if you want to speak with your

8    attorney or whether you have a question or you don't

9    understand something, so please let me know and I'll give you

10   the opportunity to speak to him.  Do I have your assurance

11   that you'll let me know if you wish to speak with your

12   attorney?

13         THE DEFENDANT:  Yes, your Honor.  Thank you.

14         THE COURT:  Thank you.  You have sworn to tell the

15   truth, that means that if you answer any of my questions

16   falsely your answers may be used against you in a separate

17   prosecution, that means an entirely different case from this

18   one, from the crimes of perjury or of making a false

19   statement, do you understand that?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  For the record, what is your full name.

22         THE DEFENDANT:  Igal, I-G-A-L, Haimoff,

23   H-A-I-M-O-F-F.

24         THE COURT:  Thank you.  There is no middle name?

25         THE DEFENDANT:  No.

PLEADING

1          THE COURT:  Thank you.  How old are you now, sir.

2          THE DEFENDANT:  Sixty-seven.

3          THE COURT:  What is the highest grade that you

4    completed in school?

5          THE DEFENDANT:  I went Jewish schools.

6          THE COURT:  You went to Jewish schools okay.

7          MR. GERSON:  He's a Rabbi, your Honor.

8          THE COURT:  So you went to some Rabbinical

9    institutions; is that correct?

10          THE DEFENDANT:  I got up to be a judge, yes.

11          THE COURT:  A Rabbinical Judge, correct?

12          MR. GERSON:  Yes.

13          THE COURT:  How many years of study is that all

14    together from the time you were a little boy, a lot of years.

15          THE DEFENDANT:  Many years, 55 --

16          THE COURT:  I want to have an idea.

17          THE DEFENDANT:  Fifty-five years.

18          THE COURT:  So pretty much most of your life, okay.

19    Where generally were you born.

20          THE DEFENDANT:  Israel.

21          THE COURT:  Are you a naturalized United States

22    citizen?

23          THE DEFENDANT:  What does it mean?

24          THE COURT:  Are you a citizen of the United States

25    now?

PLEADING

1                    THE DEFENDANT:  Yes.

2                    THE COURT:  You were naturalized.

3                    THE DEFENDANT:  Yes, your Honor.

4                    THE COURT:  Do you have any idea how long ago you

5     were naturalized.

6                    THE DEFENDANT:  I think it was 1980 or '81.

7                    THE COURT:  So around that time.  Let's say around

8     the 1980s around that time.

9                    THE DEFENDANT:  Yes.

10                   THE COURT:  Are you presently or have you recently

11    been under the care of a medical doctor for any reason, high

12    blood pressure, anything or all.

13                   THE DEFENDANT:  I have cancer.

14                   THE COURT:  Are you still being treated for that?

15                   THE DEFENDANT:  I'm in remission.

16                   THE COURT:  That's good.  But I assume you still see

17    a doctor.

18                   THE DEFENDANT:  Oh, yes.

19                   THE COURT:  Are you on any medication?

20                   THE DEFENDANT:  Yes, ma'am.

21                   THE COURT:  Do you happen to know what the

22    medication is.

23                   THE DEFENDANT:  It's for my liver, my memory, that I

24    have to fight with.

25                   THE COURT:  Do you know what the memory medication

8

PLEADING

1   is?

2           THE DEFENDANT:  It call Zyfaxin (ph).

3           THE COURT:  I'm going to deal with that

4   phonetically.  Is there any other medication that you're

5   taking now?  Anything for high blood pressure?

6           THE DEFENDANT:  No.

7           THE COURT:  Or diabetes or anything like that?

8           THE DEFENDANT:  No.

9           THE COURT:  How many times a day do you have to take

10  this medication?

11          THE DEFENDANT:  Twice a day, your Honor.

12          THE COURT:  So morning and at night?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Did you take your medication today?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  And do any of these medications at all

17  effect your ability to understand what is going on here?

18          THE DEFENDANT:  No, your Honor.

19          THE COURT:  The medication you take for memory, does

20  that assist your memory; in other words, does it help you?

21          THE DEFENDANT:  Yes, yes.

22          THE COURT:  Are you presently or have you recently

23  been under the care of a psychiatrist?

24          THE DEFENDANT:  No.

25          THE COURT:  Have you ever been hospitalized or

PLEADING

1    treated for my mental illness?

2            THE DEFENDANT:  No, your Honor.

3            THE COURT:  Have you ever been hospitalized or

4    treated for any addiction to drugs or to alcohol?

5            THE DEFENDANT:  No, your Honor.

6            THE COURT:  In the past 24 hours, aside from the

7    medications that you told me you took this morning, I assume

8    you took your medications last night as well?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  So aside from that, have you consumed

11   any narcotic drugs?

12           THE DEFENDANT:  No, your Honor.

13           THE COURT:  Have you taken any other kind of

14   medications that might be considered over the counter, like

15   ibuprofen or Tylenol?

16           THE DEFENDANT:  No, your Honor, I'm not allowed to.

17           THE COURT:  In the past 24 hours have you consumed

18   any alcoholic beverages?

19           THE DEFENDANT:  I'm not allowed to drink.

20           THE COURT:  Although sometimes people who are not

21   allowed to drink still drink, so go figure.  As you sit here

22   right now is your mind clear?

23           THE DEFENDANT:  Oh, yes.

24           THE COURT:  Do you understand everything that is

25   going on here today, sir?

PLEADING

```
 1              THE DEFENDANT:  I do understand.

 2              THE COURT:  Thank you.  Mr. Gerson, have you

 3    discussed this matter with your client?

 4              MR. GERSON:  Yes, your Honor.

 5              THE COURT:  And in your opinion, is he capable of

 6    understanding the nature of these proceedings?

 7              THE DEFENDANT:  Yes, your Honor.

 8              THE COURT:  In your opinion, does Mr. Haimoff

 9    understand the rights that he will be waiving by pleading

10    guilty.

11              MR. GERSON:  Yes, your Honor.

12              THE COURT:  Do you have any doubt as to your

13    client's competency to plead at this time?

14              MR. GERSON:  No doubts.

15              THE COURT:  Have you advised him of the maximum

16    sentence and fine that can be imposed here?

17              MR. GERSON:  Yes, your Honor.

18              THE COURT:  Have you discussed with him the

19    operation of the advisory sentencing guidelines?

20              MR. GERSON:  Yes, your Honor.

21              THE COURT:  Mr. Haimoff, have you had a sufficient

22    opportunity to discuss this case with your attorney?

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  Are you fully satisfied with the

25    representation and advice given to you in this case by your
```

PLEADING

1   attorney?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  Have you received a copy of the

4   Indictment that has been filed in this case as to -- that's

5   the document that contains the charges.

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  Have you reviewed the charges in that

8   Indictment with your attorney?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  Specifically, did you review Count One

11  which charges you with a money laundering conspiracy, that is

12  the count to which you will be pleading guilty, did you

13  discuss that charge?

14           THE DEFENDANT:  We discussed it, your Honor.

15           THE COURT:  That charge reads as follows:  On or

16  about and between February 1, 2017 and June 18, 2018, both

17  dates being approximate and inclusive, so more or less that

18  time, it could be a little bit before, it could be a little

19  bit after, within the Eastern District of New York and

20  elsewhere, the Eastern District of New York including

21  Brooklyn, Queens, Staten Island, Nassau and Suffolk all of

22  Long Island, the defendants Igal Haimoff, Andrew Tepfer, also

23  known as Avi Tepfer, and Mark Weissman, also known as Meyer

24  Weissman, together with others did knowingly and intentionally

25  conspire to conduct and attempt to conduct one or more

PLEADING

1    financial transactions in and effecting interstate commerce

2    and involving a financial institution, the activities of which

3    had an effect on interstate and foreign commerce; to wit,

4    international wire fund transfers, which transactions involved

5    property represented by a person at the direction of and with

6    the approval of a federal official authorized to investigate

7    violations of Title 18 United States Code Section 1956, that's

8    the money laundering statute, to be the proceeds of specified

9    unlawful activity; to wit, proceeds from securities fraud in

10   violation, in other words, they were obtained in violation of

11   Title 15, United States Code, Section 78j(b), and 78ff, With

12   the intent to conceal and disguise the nature, location,

13   source, ownership and control of property believed to be the

14   proceeds of such specified unlawful activity, contrary to

15   Title 18 of the United States Code Section 1956(a)(3)(B).

16              I know that's a mouthful, do you understand that

17   charge?

18              THE DEFENDANT:  Yes, your Honor.

19              THE COURT:  Do you understand what it means to

20   conspire?

21              THE DEFENDANT:  Yes, your Honor.

22              THE COURT:  To be charged with a conspiracy.  Do you

23   have any question at all about that charge?

24              THE DEFENDANT:  I have no question, your Honor.

25              THE COURT:  Again, I remind you that if there is

PLEADING

1   anything at all that do you not understand, please let me

2   know.  I'll be happy to explain it.  And the reason why I

3   emphasize that is I'm about to explain to you the rights that

4   you have under the laws and Constitution of the United States.

5   These are the laws that every person has when they are charged

6   with a crime.

7          When you plead guilty we say you waive or you give

8   up these rights by pleading guilty.  So this is the time to

9   let me know whether or not you understand them or if you have

10  any questions at all, okay?

11         THE DEFENDANT:  Thank you, your Honor.

12         THE COURT:  Thank you.  The first and the most

13  important thing that you must understand is that you do not

14  have to plead guilty, even if you are guilty.  And that is

15  because under our legal system the prosecutor, the Government,

16  has the burden of proving the guilt of a defendant beyond a

17  reasonable doubt.  If the prosecutor cannot or does not meet

18  his burden of proof, then the jury would have the duty to find

19  the defendant not guilty even if the defendant is guilty; in

20  other words it's a question of the quality and the quantity of

21  the proof.  The jury can't say maybe he's a little guilty,

22  maybe -- no, he has to be beyond a reasonable doubt.  Do you

23  understand that?

24         THE DEFENDANT:  I understand that.

25         THE COURT:  So what this also means is that even if

PLEADING

1   you are guilty you have a choice, you have two choices.  It is

2   up to you to decide what to do, not up to your lawyer, your

3   family, your friends, or anyone else, or perhaps in your case

4   your congregation if you have a congregation.  You may

5   withdraw your previously entered plea of not guilty and plead

6   guilty, as you apparently wish to do today.  That's one

7   choice.

8             Or you may chose to go to trial simply by persisting

9   in your plea of not guilty and make the Government meet its

10  burden of proving your guilt beyond a reasonable doubt.  Do

11  you understand that?

12            THE DEFENDANT:  I understand that.

13            THE COURT:  If you plead not guilty under the

14  Constitution and laws of the United States, you are entitled

15  to a speedy and a public trial by a jury with the assistance

16  of counsel on the charges that are contained in the Indictment

17  that has been filed with the Court.  Do you understand that?

18            THE DEFENDANT:  I understand.

19            THE COURT:  At the trial you would be presumed

20  innocent.  You would not have to prove that you are innocent

21  because it is the Government's burden to overcome that

22  presumption and prove you guilty by competent evidence, that's

23  admissible evidence, and beyond a reasonable doubt.  Do you

24  understand that?

25            THE DEFENDANT:  I understand that.

PLEADING

1    THE COURT:  If the Government does not meet its

2    burden, the jury would have the duty to find you not guilty.

3    Do you understand that.

4    THE DEFENDANT:  I understand.

5    THE COURT:  By pleading guilty you're giving up your

6    right to have the Government satisfy its burden of proving

7    that you are guilty beyond a reasonable doubt.  Do you

8    understand that?

9    THE DEFENDANT:  I understand.

10    THE COURT:  In the course of the trial the witnesses

11    for the Government would have to come to court and testify in

12    your presence.  Your attorney would have the right to

13    cross-examine the witnesses for the Government.  Your attorney

14    could object to any evidence offered by the Government.  Your

15    attorney could offer evidence on your behalf, and that would

16    include the right to subpoena or compel witnesses to come to

17    court and testify.  And that would also include the right to

18    raise any defenses you may have available to you under the

19    law.  Do you understand that?

20    THE DEFENDANT:  I understand, your Honor.

21    THE COURT:  By pleading guilty, and if I accept your

22    plea, you give up your right to confront the witnesses who

23    would testify against you.  You also give up your right to

24    offer any evidence on your own behalf, including the right to

25    compel witnesses to come to court and testify.  And you give

PLEADING

1    up your right to raise any defenses you may have under the

2    law.  Do you understand that?

3            THE DEFENDANT:  I understand, your Honor.

4            THE COURT:  Thank you.  At a trial you have the

5    right to testify on your own behalf, but only if you chose to

6    do so.  You are not required to testify, because under the

7    Constitution of the United States a defendant in a criminal

8    case cannot be forced to take the witness stand at his trial

9    and say anything that can be used against him to show that he

10   is guilty of the crime with which he is charged.  If you

11   decided not to testify, then I would instruct the jury that

12   they could not hold your silence against you.  This is called

13   your right against self-incrimination.  Do you understand that

14   right?

15           THE DEFENDANT:  I understand, yes.

16           THE COURT:  By pleading guilty you are admitting

17   your guilt, you give up your right against self-incrimination.

18   Do you understand?

19           THE DEFENDANT:  I understand.

20           THE COURT:  If you plead guilty I must ask you

21   questions about what you did in order to satisfy myself that

22   you in fact are guilty of the charge to which you are pleading

23   guilty.  You will have to answer my questions truthfully and

24   acknowledge your guilt.  In that regard, I remind you that you

25   have taken an oath to answer my questions truthfully.  Do you

PLEADING

1    understand that?

2              THE DEFENDANT:  I understand.

3              THE COURT:  In other words, it is not enough just to

4    say that you are guilty.  You must tell me what it is that you

5    actually did that makes you guilty of the particular charge to

6    which you are pleading guilty.  Do you understand?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  If you plead guilty, and I accept your

9    plea, you will be giving up your Constitutional right to a

10   trial and all of these other rights that I have just

11   discussed.  There be no further trial of any kind, I will

12   simply enter a judgment of guilty on the basis of your guilty

13   plea.  Do you understand that?

14             THE DEFENDANT:  I understand.

15             THE COURT:  If you decided to go to trial and a jury

16   found you guilty, you could appeal both the verdict and the

17   sentence.  You could appeal from any of the evidentiary

18   rulings that I would make during the course of the trial.  And

19   if your attorney had filed motions and I ruled against you on

20   those motions, you could also appeal those decisions.  But by

21   pleading guilty and by entering into the plea agreement that

22   is before the Court, you will have waived or given up your

23   right to appeal or to collaterally attack all or part of the

24   sentence that the Court will impose, if I should impose a term

25   of imprisonment of 78 months or something less than that, do

PLEADING

1     you understand that?

2                THE DEFENDANT:  I understand.

3                THE COURT:  In addition, by entering into this plea

4     agreement you also waive any right to raise on appeal or on

5     collateral review, that's like a writ of habeas corpus, any

6     argument that the statute to which you're pleading guilty to

7     today is unconstitutional.  And you also you give up your

8     right to raise on appeal or on collateral review any argument

9     that the conduct that you're admitting to, the admitted

10    conduct does not fall within the scope of the statute to which

11    you're pleading guilty.  Do you understand that?

12               THE DEFENDANT:  I understand that, yes, your Honor.

13               THE COURT:  Are you willing to give up your right to

14    a trial and the other rights that I have just discussed?

15               THE DEFENDANT:  Yes, your Honor.

16               THE COURT:  I mentioned the plea agreement and I do

17    have a document marked as Government's Exhibit 1.  It has

18    several pages to it, on the last page it has today's date.

19               Mr. Reilly, is that your signature on the

20    upper-right corner of the document?

21               MR. REILLY:  Yes, your Honor.

22               THE COURT:  And right below that do you recognize

23    that to be the signature of Robert Polmeni, the Supervising

24    Assistant U.S. Attorney?

25               MR. REILLY:  I do, your Honor.

PLEADING

1          THE COURT:  Right below Mr. Polmeni's signature

2    there is a brief typewritten paragraph that reads, "I have

3    read the entire agreement and discussed it with my attorney.

4    I understand all of its terms and I'm entering into it

5    knowingly and voluntarily."

6          Is that your signature right below that,

7    Mr. Haimoff?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Mr. Gerson is that your signature below

10   that of your client?

11         MR. GERSON:  Yes, your Honor.

12         THE COURT:  Thank you.  Mr. Haimoff, have you read

13   this written plea agreement?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Have you reviewed this plea agreement

16   with your attorney?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  Do you understand all of the terms that

19   are in this plea agreement?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Does this written plea agreement

22   accurately represent the entire understanding or agreement

23   that you have reached with the Government?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Are you sure about that?

PLEADING

1        THE DEFENDANT:  Yes, your Honor.

2        THE COURT:  Does it cover everything as far as you

3   know, as far as your agreement is concerned?

4        THE DEFENDANT:  Yes, your Honor.

5        THE COURT:  Okay.  Just to say it a different way,

6   and Mr. Gerson, have you read and reviewed with your client

7   the written plea agreement that is before the Court?

8        MR. GERSON:  Yes, your Honor.

9        THE COURT:  Does it reflect your understanding of

10  the entire agreement that your client has entered into with

11  the Government.

12       MR. GERSON:  Yes, your Honor.

13       THE COURT:  Mr. Reilly, does this written plea

14  agreement reflect the Government's understanding of the entire

15  agreement that it has entered into with Mr. Haimoff and his

16  counsel?

17       MR. REILLY:  Yes, your Honor.

18       THE COURT:  Now, I do want to discuss with you the

19  sentencing scheme that is applicable here.  That has also been

20  laid out in the plea agreement.

21       Before we get to that, though, I want to explain

22  something to you from a practical perspective, if you will.

23  Let's assume that I accept your plea of guilty today, if I do

24  that, then as I do in every case, I will at a later time enter

25  a scheduling order.

PLEADING

1          I will direct the Department of Probation to prepare

2    what is called a presentence report.  And that's a very

3    important document.  The Probation Department works for the

4    court, it's an arm for the court.  They do not work for the

5    defense or the Government.  Their role is to assist the Court

6    in sentencing.  So that document is a very important document

7    because they are going to interview you.  They are going to

8    ask you everything about your life from the time you were

9    born, your family, your schooling, your health, everything,

10   finances.

11         All of that is important because at the time of

12   sentencing I'm not imposing sentence on a piece of paper, it's

13   on a human being.  It will tell me who you are, what do I need

14   to know about Mr. Haimoff as a person.

15         In addition, they are going to talk to the

16   Government.  They are going to ask the Government what was

17   their evidence in the case, then give a summary of the facts.

18         The other thing that probation is going to do is

19   it's going to do its own calculation of what it believes a

20   sentence guideline range should be in this case.  They are

21   going to make a calculation based on a total offense level.

22   They are going to look up your criminal history, if you have

23   any.  They are going to lay it out, they are going to make a

24   calculation.  It could be that calculation is different from

25   what you and your attorney think it should be.  It could be

PLEADING

1   different from what the Government thinks it should be.  They

2   might agree with you all.  But they are going to come up with

3   their own calculation.

4          In addition, they are going to point out to the

5   Court any factors that they consider as factors that would

6   warrant a downward departure based on the sentencing

7   guidelines, which are advisory, or any departures which could

8   be downward or upward.

9          They will also point out any factors that they think

10  might warrant a variance, that's a sentence outside of the

11  advisory guideline, either upward or downward.  They are also

12  going to make a sentence recommendation, it takes a while to

13  prepare that.  The more complicated the case, the longer it

14  will take.

15         You will be interviewed.  It's important that you

16  have your attorney present, I strongly advise that.

17         Once it's prepared, it will be disclosed to you,

18  your attorney, the Government, and the Court.  All of us will

19  have time to review it to make any objections to anything that

20  we see in it.  If we have to have a hearing, we can have a

21  hearing on any factors that we disagree on.  And then in

22  addition to that, I always ask the lawyers to give me in

23  writing prior to the date of sentence, to give me in writing a

24  sentencing memorandum to make their arguments to me as to what

25  they think is an appropriate sentence in this case and in any

PLEADING

1    case.

2              Then we're going to have the sentencing hearing.  So

3    the scheduling order will have a two dates, disclosure of the

4    presentence report, nobody comes to court on that date; and

5    the date for the sentencing hearing.  You'll be here with your

6    lawyer, probation, the Government will be here, of course I

7    will be.

8              At that time, to the extent there are any

9    outstanding objections to the presentence report, I will

10   resolve them, assuming that we don't need to have a hearing.

11   And at that time is when I will make a determination as to

12   what the sentence guideline range should be.

13             Now the sentencing guidelines are advisory, that

14   means they are not binding on the Court.  But regardless, the

15   Court has an obligation under the law to make that

16   determination because it's a starting point.  We start from

17   there and we can go below, we can go above.  That's our

18   starting point in our analysis for sentencing.  We're supposed

19   to get it right, as best as we humanly can.  To the extent I

20   need to hear more from the attorneys, I'll hear from the

21   attorneys or I'll hear from probation.

22             Until that time of sentencing, nobody is going to

23   know, and sometimes even myself, because I may need to hear

24   more from the attorneys, we may not know what the actual

25   guideline is going to be until that day I make that final

PLEADING

1    decision.  Do you follow me so far?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Then I will turn the floor over the

4    lawyers.  I will let the lawyers make their arguments with

5    respect to sentencing.  The law also gives you the right to

6    make a statement to the Court before I impose sentence.

7              Then it's not until after all of that has happened

8    that I will impose sentence.

9              All of this is important, even if I come with some

10   general idea of what may be the sentence should be, sometimes

11   what I hear changes my mind.  So it's important.

12             Why I do tell you this.  I tell you this because I'm

13   going to explain to you what the sentencing scheme is, but I

14   don't have any of this information right now.  It's a lot of

15   information.  I don't have any of it.  So at this point today,

16   I have no idea what sentence I will be imposing.  So I do not

17   want you to assume from anything that I say or have said that

18   I already have some idea in my ahead as to what the sentence

19   is going to be, because I do not.  I just don't have any

20   information at all to base that decision on, okay.

21             However, I do have an obligation to make sure that

22   you completely understand the consequences of pleading guilty

23   including the outside punishment, right, the consequences that

24   you face.  That's my role here today, to make sure that you

25   understand that.  I just don't want you to assume that I've

PLEADING

1    already got this idea in my head as to what it's going to be.

2              THE DEFENDANT:  Yes.

3              THE COURT:  It's a long explanation, but I think it

4    helps sometimes defendants to understand what may come later

5    and understand why sometimes there is a delay from the time

6    they enter a plea of guilty --

7              THE DEFENDANT:  I appreciate that.

8              THE COURT:  -- from the time they get sentenced,

9    especially when they are in custody.  It doesn't relate to you

10   but --

11             So let's get back to the sentencing scheme.  With

12   respect to the Count One, the money laundering conspiracy that

13   is charged, there is no minimum term of imprisonment.  There

14   is a maximum term of imprisonment of 20 years.  If I were to

15   impose a prison term, I would also be imposing a term of what

16   is called supervised release.  And what that means is once you

17   are done serving the prison term, you come under the

18   supervision of the Probation Department, and the maximum term

19   of supervision is three years.

20             The Department of Probation is going to impose what

21   they call mandatory conditions of supervision.  For example,

22   that you report on a regular basis.  In this case there might

23   be financial disclosures, things like that.

24             I also may impose what are called special conditions

25   of supervised release.  For example, that you not possess a

PLEADING

1   firearm.  If you were to violate any of the conditions of

2   supervised release, whether imposed by probation or by the

3   Court, then you could receive an additional jail sentence up

4   to two years of additional jail time.  You will not get credit

5   for the time you already spent on supervised release, even if

6   you were close to finishing the supervised release term, you

7   would not get credit for any of the time that you spent on the

8   original jail sentence.  Do you understand that?

9           THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  There is a maximum fine here, which is

11  the greater of $250,000, or twice the gross gain or twice the

12  gross loss.

13          Does the Government have an estimate as to what the

14  gross gain or gross loss is here?

15          MR. REILLY:  Yes, your Honor.  The amount of funds s

16  that were actually transferred during the course of the

17  investigation were $20,000.  So it's the Government's

18  anticipation that the cap for the fine would be $250,000.  We

19  don't anticipate facts that would make the gross gain or loss

20  figure or twice the gain or loss figure higher than $250,000.

21          THE COURT:  Do you understand that, Mr. Haimoff?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  There is a special assessment of $100

24  that I must impose.

25          In addition, by entering into the plea agreement you

PLEADING

1   have agreed to enter into a forfeiture, have a forfeiture

2   money judgment entered against you, I believe the amount is

3   $20,000, correct?

4                   MR. REILLY:  Yes, your Honor.

5                   MR. GERSON:  My client is prepared to pay that

6   whenever the Court asks him to.

7                   THE COURT:  According to the terms of the plea

8   agreement it has to be paid within 30 days of sentencing.

9   Obviously, if he can pay it before that, then he pays it

10  before that.  Again, this is all assuming I accept his plea of

11  guilty.

12                  MR. GERSON:  I understand, your Honor.

13                  THE COURT:  But that's according to the terms.

14  After that, it just becomes a judgment and it starts earning

15  interest, I think even as a judgment.

16                  MR. REILLY:  Yes, your Honor.

17                  THE COURT:  Then it follows you forever as a

18  judgment.

19                  MR. GERSON:  I discussed with Mr. Reilly before and

20  we'll set it up and get rid of it right away.

21                  THE COURT:  Okay, that's up to you all to work that

22  out.  But in connection with the forfeiture and by entering

23  into this agreement, you're also agreeing to cooperate in

24  collection of the forfeiture money judgment, which does not

25  sound like it's a problem.  You agree to give up any rights

PLEADING

1    you have to notice or to have a jury make a determination.

2    And if for some reason it turns out that you can't come up

3    with the money for the money judgment, that the Government

4    would be able to come after any other assets you may have, any

5    property, and so on.  Do you understand that?

6               THE DEFENDANT:  Yes, your Honor.

7               THE COURT:  You told me that you were born in Israel

8    and you are a naturalized citizen in the United States.  The

9    plea agreement also advises you, and I would advise you as

10   well, that even if you are a naturalized citizen that there

11   could be consequences, immigration consequences, by pleading

12   guilty.  Specifically, that you could lose your citizenship;

13   in other words, be denaturalized.  Do you understand that?

14              THE DEFENDANT:  I understand that.

15              THE COURT:  This Court has no control over

16   immigration proceedings.  That is a completely separate

17   agency.  There are Immigration Judges they are completely

18   different judges.  I have zero control over any of that.  You

19   understand that?

20              THE DEFENDANT:  I understand.

21              THE COURT:  In addition, I like to err on the side

22   of caution and advise, if it turns out that you are not a

23   citizen of the United States, naturalized or otherwise, that a

24   conviction in this case could would likely result in your

25   deportation or removal to your country of origin.  Do you

PLEADING

1    understand that?

2              THE DEFENDANT:  I understand.

3              THE COURT:  Okay.  Understanding that, do you still

4    wish to enter a plea of guilty?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Any questions about any of that at all?

7              THE DEFENDANT:  No questions, your Honor.

8              THE COURT:  I explained it to you in a rather long

9    round-about way what the sentencing process is and the bottom

10   line is that we start with the sentencing guidelines.  They

11   are advisory, nobody knows until the date of sentence what the

12   guidelines range will be until I make that determination.  And

13   we are not going to know whether there are grounds to depart

14   from the guideline, either below or above.  And we're not

15   going to know whether there are grounds for a variance for a

16   sentence completely outside of the guideline system, which

17   means, I can take into account a lot of different things.  You

18   understand that?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Notwithstanding that, I'm going to ask

21   the attorneys at this time to give me their best estimate as

22   to what the guidelines are likely to say based on the

23   information that is available to them at this point in time.

24   Please keep in mind, that this is a guess and it could be

25   wrong.  There could be other things that come to light.  It

PLEADING

1    happens sometimes when probation does its investigation and

2    they find information that effects it.  Do you understand

3    that?

4               THE DEFENDANT:  Yes, your Honor.

5               THE COURT:  So what is the Government's estimate as

6    to where within the guidelines Mr. Haimoff falls?

7               MR. REILLY:  Your Honor, the Government estimates

8    that the total offense level would be 28, arrives at that

9    number by base offense level of 2S1.1(a)(2), which is base

10   offense level of 8, with a two-level adjustment under

11   2S1.1(b)(2)(B) for a conviction under section 1956.  And then

12   an additional 18-point enhancement under 2B1.1(b)(J), which

13   relates to loss money involving greater than three-and-a-half

14   million dollars.

15               As I noted, a total offense level of 28, a two-level

16   reduction for acceptance of responsibility would bring an

17   adjusted offense level of 26, assuming that Mr. Haimoff is

18   criminal history one, would result in an advisory guideline

19   range of 67 to 78 months.

20               Assuming an additional one-level reduction for

21   acceptance, which the Government would expect to move for

22   based on timely acceptance.  The total offense level would be

23   reduced to 25, your Honor, with a criminal history of one,

24   that would result in an advisory guideline range of 57 to 71

25   months.

PLEADING

1          THE COURT:  Mr. Gerson, are you in agreement with

2    that calculation?

3          MR. GERSON:  Yes, your Honor.  I went over it with

4    Mr. Reilly before we came in before the Court.

5          THE COURT:  Would your client like to consult with

6    you for a little bit at this point?

7          MR. GERSON:  Yes, just one second.

8          THE COURT:  Sure.

9          MR. GERSON:  I explained it to him, your Honor.

10         THE COURT:  Any questions about that, Mr. Haimoff?

11         THE DEFENDANT:  No, your Honor.

12         THE COURT:  Do you understand that this estimate is

13   not binding on the Government, probation or the Court?

14         THE DEFENDANT:  I understand.

15         THE COURT:  Do you also understand that if this

16   estimate is wrong, you will not be permitted to withdraw your

17   plea of guilty?

18         THE DEFENDANT:  I understand.

19         THE COURT:  Do you have any questions that you would

20   like to ask me about the charge, your rights, or anything else

21   related to this matter?

22         THE DEFENDANT:  I'm fine, your Honor.

23         THE COURT:  The answer is no?

24         THE DEFENDANT:  No.

25         THE COURT:  Just to be clear.  Thank you.

PLEADING

1    Mr. Gerson, do you know of any reason why your

2  client should not plead guilty?

3    MR. GERSON:  No, your Honor.

4    THE COURT:  Are you aware of any viable legal

5  defense to the charge?

6    MR. GERSON:  No, your Honor.

7    THE COURT:  Mr. Haimoff, are you ready to plead at

8  this time?

9    THE DEFENDANT:  Yes, your Honor.

10    THE COURT:  Do you wish to consult with your

11  attorney before pleading?

12    THE DEFENDANT:  We consulted already.

13    THE COURT:  What is your plea to the first count of

14  the Indictment that charges you with the money laundering

15  conspiracy, guilty or not guilty?

16    THE DEFENDANT:  Yes, guilty.

17    THE COURT:  Are you pleading guilty voluntarily and

18  of your own free will?

19    THE DEFENDANT:  Voluntarily, yes.

20    THE COURT:  And has anyone threatened or forced you

21  to plead guilty?

22    THE DEFENDANT:  No, your Honor.

23    THE COURT:  Other than the promises that are

24  contained in the written plea agreement, has anyone made any

25  other promises to you to get you to plead guilty.

PLEADING

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  Has anyone made any promise to you as to

3  what your final sentence will be?

4          THE DEFENDANT:  No, your Honor.

5          THE COURT:  If you will recall earlier on in this

6  proceeding I reviewed Charge One with you, remember the first

7  count?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Would you like for me to review that

10  with you again?

11          THE DEFENDANT:  I don't think so.

12          THE COURT:  Okay.

13          THE DEFENDANT:  I remember.

14          THE COURT:  At this point in time I would like for

15  you to describe for me in your own words what it is that you

16  did in connection with the acts that are charged in Count One.

17          THE DEFENDANT:  Part of my, I'm dealing with

18  Mr. Tepfer and his wife.  I made offer to get some money into

19  my account and to transfer it to Mr. Tepfer and to his wife.

20          THE COURT:  Did that happen around or between

21  February 1 of 2017 and June 18 of 2018?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And was Mr. Weissman involved in this as

24  well?

25          THE DEFENDANT:  He was involved, yes.

                              PLEADING

1            THE COURT:  Did you understand that this was money

2   that was actually part of proceeds from a securities fraud,

3   from a prior securities fraud proceeding?

4            THE DEFENDANT:  Not to the full extent, but I found

5   that out, yes.

6            THE COURT:  So at some point you were made aware

7   that the proceeds were illegal proceeds.

8            THE DEFENDANT:  Yes.

9            THE COURT:  Is there any direct questioning that you

10  would like, Mr. Reilly?  You can inquire.

11           MR. REILLY:  Mr. Haimoff, is it correct that the

12  money that was received was received into the bank account of

13  a charity that you controlled?

14           THE DEFENDANT:  Yes.

15           MR. REILLY:  Did that money, was that the result of

16  an international wire transfer?

17           THE DEFENDANT:  Yes.

18           MR. REILLY:  Did you also understand that the money

19  was being transferred through you and the charity to conceal

20  the fact, or to hide the fact, that the money was going to be

21  transferred to Avi Tepfer?

22           THE DEFENDANT:  Yes.

23           MR. REILLY:  It was also designed to conceal who

24  owned the money, who was going to own the money.

25           THE DEFENDANT:  Yes.

PLEADING

1       THE COURT: And I assume the Government's prove in

2 connection with the effecting interstate and foreign commerce

3 is the fact of the wire transfer?

4       MR. REILLY: Correct. I should note that, and

5 Mr. Haimoff can confirm, that conversations relating –– that

6 both his charity is located within the Eastern District of New

7 York, and that conversations and communications relating to

8 this conspiracy occurred within the Eastern District of New

9 York.

10       THE COURT: Would you agree with that, Mr. Haimoff?

11       THE DEFENDANT: Yes.

12       THE COURT: Is the allocution satisfactory to the

13 Government?

14       MR. REILLY: It is, your Honor.

15       THE COURT: Based on the information given to me, I

16 find that Mr. Haimoff is acting voluntarily, that he

17 understands his rights and the consequences of his plea, and

18 that there is a factual basis for the plea. I, therefore,

19 accept his plea of guilty to Count One of the Indictment.

20       And in my long explanation I told you there will be

21 a separate scheduling order scheduling, the two dates, in

22 connection with sentencing. So you'll just look out for that.

23       Mr. Reilly, if you could please have the forfeiture

24 order provided to me no later than March 14.

25       MR. REILLY: Yes, your Honor.

PLEADING

1          THE COURT:  That should give you time to craft it

2    and obviously counsel needs time to review it with his client.

3    If you need more time, let me know.

4          MR. REILLY:  I don't think it's a problem at all.

5          THE COURT:  Anything else to raise with the Court

6    today?

7          MR. GERSON:  One question, your Honor, I was

8    speaking with Mr. Reilly, my client has 93-year-old mother in

9    Israel.  I understand the Government is concerned, because he

10   has dual citizenship, but I was trying to think of a way,

11   either a higher bail if he would go, or something like that.

12         THE COURT:  No.  Denied.

13         With respect to sentencing submissions and the

14   presentence report, I do direct your attention to my standard

15   requirements in criminal cases, which is a separate

16   stand-alone document that you can find on the Court's website

17   in connection with sentencing.  Just a couple of

18   clarifications, because there are points of confusion.  I did

19   make a change that is not reflected in the documents

20   themselves.

21         The first thing is that I do require that objections

22   to the presentence report as is codified in Rule 32 of the

23   Federal Rules of Criminal Procedure be in writing.

24         And it's a simultaneous schedule, that means both

25   the Government and defense will make objections to the

PLEADING

1   presentence report within 14 days of the disclosure of the

2   presentence report.  That also includes a written notification

3   that you don't have any objection, you do not have objections

4   to the presentence report.  And please be sure to send me a

5   hard courtesy copy of that letter.  That letter is going to go

6   to probation, send me a hard courtesy copy.  If there are

7   objections to the presentence report then the adversary needs

8   to respond within 14 days, again in writing.  Please send a

9   hard courtesy copy to chambers.  And any reply to that, again,

10  14 days later, with a hard courtesy copy to chambers.

11          With respect to sentencing submissions, this is

12  where it's different.  I now require the Government to file

13  first.  I used to require the defense to file first, I heard

14  what that meant for the defense so I now make the Government

15  go first.  Fourteen days prior to sentence, do not count the

16  date of sentence, and then count backwards that's the day it's

17  due.  And the defense sentencing memorandum is seven days

18  prior to sentence.  Are you a solo?

19          MR. GERSON:  I have a group I work with.

20          THE COURT:  I just ask because life happens, trial

21  happen, things happen.  If you sense that you're not going to

22  be able to comply with the schedule, let us know sufficiently

23  in advance, because I really take it seriously and I read

24  every single word that is given to me.

25          MR. GERSON:  I appreciate that.

PLEADING

1          THE COURT:  And one other thing, very often the

2    defense would like to submit letters from family members,

3    community friends, whatever, that's fine.  I'm not big on

4    pictures, I'll be up front on that.  But the letters are fine.

5    But Mr. Haimoff, that's where you can help your lawyer, just

6    because civilians don't understand the time frame and the

7    schedule.  And so to the extent that that can be provided

8    early to your attorney, I always feel sorry for the attorney

9    who comes in with a handful of letters on the date of

10   sentencing.  I seriously want to review everything.  So I need

11   to have time to look at it.  The Government needs to have time

12   to look at it.  It's just something that comes up quite often.

13          THE DEFENDANT:  Okay.

14          THE COURT:  Anything else?

15          MR. REILLY:  No, your Honor.

16          (Whereupon, the matter was concluded.)

17                *     *     *     *     *

18   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

19

20

     Rivka Teich, CSR RPR RMR FCRR
21   Official Court Reporter
     Eastern District of New York

22

23

24

25